**Colleen PUTNAM, et al., Plaintiffs,**

v.

**OAKLAND UNIFIED SCHOOL DISTRICT, et al., Defendants.**

**No. C93–3772 CW (MEJ).**

United States District Court, N.D. California.

Nov. 25, 1997.

---

Sidney Wolinsky, Laurence W. Paradis, Oakland, CA.

Daniel S. Mason, David Hoskins, Furth, Fahrner & Mason, San Francisco, CA.

Henry S. Hewitt, Sharon J. Persons, Erickson, Beasley, Hewitt & Wilson, Oakland, CA.

## ORDER RE: MOTION TO COMPEL COMPLIANCE WITH CONSENT DECREE

JAMES, United States Magistrate Judge.

Before the Court is Plaintiffs' Motion to Compel Compliance with the Consent Decree. Having read and considered the parties' moving papers and exhibits, and Good Cause appearing, the Court ORDERS Defendants to comply with the terms of the Consent Decree in this case, as modified below.

1. Section III provides:

## BACKGROUND

On January 28, 1997, the parties in this case entered into a Consent Decree settling an action brought by Plaintiffs to enforce compliance with the Americans with Disabilities Act and the Rehabilitation Act by the Oakland Unified School District (hereafter "Defendants"). In October 1997, the parties consented to the jurisdiction of a Magistrate Judge for resolution of this dispute. On November 14, 1997, Defendants were ordered to designate a permanent Project Manager pursuant to Section XII of the Consent Decree no later than December 1, 1997. This order addresses the remaining issues raised by Plaintiffs' motion.

## DISCUSSION

The Consent Decree sets forth a number of affirmative obligations agreed to by Defendants in order to make their facilities accessible to disabled students and others. These obligations appear for the most part to be self-executing; however, Section XVII provides for reimbursement of Plaintiffs' monitoring costs, up to $8,500 per year, to help assure that Defendants fulfill their obligations under the Consent Decree.

The Court's review of the parties' papers indicates that Defendants have failed to comply in a timely fashion with virtually every provision of the Consent Decree. Defendants' seeming strategy of delay and obstruction has resulted in frustration for Plaintiffs and the Court, needless motions, and most importantly, continued lack of access to Oakland Unified School District facilities for disabled students. Accordingly, the Court reviews the obligations assumed by Defendants under the terms of the Consent Decree.

### 1. Programmatic Self–Evaluation

Section III.A of the Consent Decree requires that Defendants complete and submit to Plaintiffs' counsel a "programmatic self-evaluation" pursuant to 28 C.F.R. § 35.105(a) and 34 C.F.R. § 104.6(c)(1)(i), no later than one month after the Settlement Approval Date.[1] Plaintiffs assert that Defendants have

A. No later than one month after the Settlement Approval Date, OUSD will complete and

failed to complete this task. Defendants argue that a document produced in response to Plaintiffs' request for production of documents constitutes a programmatic self-evaluation satisfying Section III.A, and that Plaintiffs have waived any objections because they were not timely raised. Attached as Exhibit 1 to the Declaration of Henry Hewitt is the document previously produced by Defendants as the "programmatic self-evaluation," a document prepared by CST Consulting. The document is labeled "Americans with Disabilities Act (ADA) Title II Self–Evaluation Project" and dated January 10, 1995.

■ By no stretch of the imagination can this Court find that a survey completed in January 1995 satisfies the requirements of Section III.A of the Consent Decree. The language of the decree contemplates that Defendants will prepare a self-evaluation report after the date of settlement, not that Defendants will recycle an old report. Further, although the Consent Decree does not explicitly state that Defendants are to create a new report, it is not unreasonable for Plaintiffs to expect that Defendants would prepare a programmatic self-evaluation tailored to address the issues raised by Plaintiffs' suit and the Consent Decree. It is disingenuous for Defendants to suggest that the document submitted to Plaintiffs satisfies the requirements of Section III.A.

submit to plaintiffs' counsel a programmatic self-evaluation pursuant to 28 C.F.R. § 35.105(a) and 34 C.F.R. § 104.6(c)(1).

B. Pursuant to the Magistrate–Judge dispute resolution procedure in paragraph XIV, the plaintiffs may seek an order correcting any alleged deficiency in the evaluation.

C. Except as expressly provided in other sections of this Decree, nothing herein shall be construed as requiring the defendants to take any action as a result of, or based on, the evaluation.

2. From the papers submitted to the Court, it appears that a survey by Sally Swanson scheduled for completion on October 31, 1997 may satisfy the programmatic self-evaluation requirement. If so, this document should be submitted to Plaintiffs' counsel and the Court as soon as possible. Otherwise, Defendants must prepare and submit a separate document to fulfill the programmatic self-evaluation requirement no later than January 30, 1998.

The Court finds that Defendants have failed to comply with Section III.A of the Consent Decree. Defendants are ORDERED to prepare and submit to Plaintiffs' counsel a programmatic self-evaluation no later than January 30, 1998. This programmatic self-evaluation shall be filed with the Court and shall be clearly labeled as a "Programmatic Self–Evaluation." [2]

### 2. Survey of Existing Facilities

Section IV of the Consent Decree directs Defendants to complete and submit to Plaintiffs' counsel by March 1, 1997, a survey identifying architectural and physical barriers which may deny students with mobility impairments access to Defendants' facilities and programs.[3] It appears uncontested from the parties' papers that Defendants have failed to complete this survey within the time set by the Consent Decree. Furthermore, Defendants have not petitioned the Court for modification of the Consent Decree to extend the deadline for this requirement.

■ Defendants submitted with their opposition brief a number of documents, including one document labeled "Draft Accessibility Survey Report, Claremont Middle School," dated April 28, 1997. Defendants indicate that a firm was hired to conduct the survey of their facilities, and that "given the scope of the survey, it is taking longer than expected to complete." The Court agrees that the

3. Section IV provides:

A. As soon as reasonably possible, and in no event later than March 1, 1997, unless OUSD shows good cause for an extension, OUSD will complete and submit to plaintiffs' counsel a survey of existing OUSD facilities which identifies all architectural barriers and physical obstacles which may deny students with mobility impairments access to OUSD programs, services and activities in any and all schools. Plaintiffs' suggestions regarding contractor selection and/or specific areas to be covered shall be considered by OUSD in good faith.

B. Pursuant to the Magistrate–Judge dispute resolution procedure in paragraph XIV, the plaintiffs may seek an order correcting any alleged deficiency in the survey.

C. Plaintiffs agree that the survey of existing facilities, together with this Consent Decree, meet OUSD's obligation to prepare a "Transition Plan" pursuant to 28 C.F.R. § 35.150(d).

scope of the survey appears quite broad; however, this does not excuse Defendants' failure to provide Plaintiffs with information as it became available as a show of good faith, or at a minimum to seek an order from the Court extending the deadline for good cause shown, as provided for in Section IV of the Consent Decree.

Therefore, Defendants are ORDERED to file with the Court and serve on Plaintiffs a survey of existing facilities pursuant to Section IV of the Consent Decree no later than January 30, 1998.

### 3. Identification and Remediation of Safety Hazards

Section XI discusses the repair, modification or removal of safety hazards at schools throughout the District,[4] Safety hazards are defined in Section II.B.3 of the Consent Decree to include: "(a) ramp slopes in excess of 10%; (b) cross-slopes greater than 3% on ramps; (c) ramps lacking handrails that meet the specifications of ADAAG and Title 24; (d) ramps lacking level areas at the top, middle, and bottom of ramps where required by the specifications of the ADAAG and Title 24; (e) gratings parallel to the direction of travel; (f) gaps larger than 1.5 inches in gratings; and (g) any other conditions that the parties agree constitute safety hazards."

Defendants agreed to repair, modify or remove these safety hazards "as soon as reasonably possible" at the project schools designated in Section V.B, except where such work is structurally impracticable, and at all other schools except where such work is structurally impracticable or otherwise impracticable.[5] Plaintiffs agreed to identify all hazards they believe are covered by Section XI as soon as reasonably possible, with the cooperation of Defendants.

Inexplicably, it appears that neither party has met its obligations under Section XI of the Consent Decree. Plainly, the language of the Consent Decree identifies conditions in Section II.B.3 which are considered safety hazards per se and are to be repaired, modified or removed as soon as reasonably possible.

The parties are ORDERED to meet and confer and to submit a letter brief to the Court no later than January 30, 1998, detailing an agreed-upon timeline for the repair, modification or removal of the safety hazards described in Section II.B.3 at each school. If any such work at a project school is structurally impracticable, or if any such work at any non-project school is structurally or otherwise impracticable, the parties shall so indicate in their letter brief. Once the timeline for remediation of safety hazards is submitted to the Court, Defendants shall adhere to it in good faith, or timely move the Court for further modification of the Consent Decree on good cause shown. The timeline may be

4. Section XI provides:

A. As soon as reasonably possible, OUSD shall repair, modify or remove safety hazards (as defined in paragraph II.B.3.) at (a) the project schools, except where such work is structurally impracticable and (b) at all other schools except where such work is structurally impracticable or otherwise impracticable.

B. With the cooperation of OUSD, plaintiffs shall, as soon as reasonably possible, identify all safety hazards they believe are covered by this section. If OUSD contends that a particular condition is not a safety hazard or that the repair, removal and/or modification of a particular safety hazard is structurally or otherwise impracticable, OUSD shall submit a written explanation to plaintiffs' counsel explaining the basis for such contention. If the parties are not able to agree, either party may move to have the matter resolved pursuant to the Magistrate–Judge dispute resolution procedure under section XIV of this Consent Decree.

C. If additional safety hazards are identified during the term of this Consent Decree, OUSD shall modify, remove or repair such hazards, subject to the provisions of this section.

5. The following schools are designated as "project schools":

*Elementary schools:* Franklin School, Longfellow School, Joaquin Miller School, Laurel School, Lazear School, Markham School, Sherman School, Sobrante Park School, Whittier School, Lockwood School, Cox School, Burbank School, Howard School, Lafayette School, Bella Vista School and Piedmont School. *Middle Schools:* Lowell Middle School, Carter Middle School, Montera Middle School, King Estates Middle School, Madison Middle School and Elmhurst Middle School. *High Schools:* McClymonds High School, Oakland High School and Castlemont High School.

modified only with leave of court on good cause shown.

### 4. Semi-Annual Written Reports

Section XVI directs Defendants to submit to Plaintiffs' counsel semi-annual written reports describing: (1) the progress of construction projects undertaken during the reporting period; (2) any problems or delays encountered in implementation of the Consent Decree; (3) an explanation for such delays; (4) actions taken in response to any delays; (5) providing an accounting of various funds; and (6) allocations between access work and non-access work, where applicable; and (7) notifying Plaintiffs of the opportunity to inspect completed construction work. The Court finds that Defendants have not fulfilled this obligation in a timely manner and accordingly orders as follows:

The semi-annual written reports shall be due on January 31 and July 31 of each year during the life of the Consent Decree and shall be filed with the Court on the date submitted to Plaintiffs' counsel. The report due on January 31 shall cover the period from July 1 to December 31 of the preceding year; the report due on July 31 shall cover the period from January 1 to June 30 of that year. The reports are to be thorough, comprehensive and detailed, with the most complete information available through diligent investigation. The reports shall be organized so as to identify work undertaken or obligations discharged in accordance with a particular Section of the Consent Decree. The Project Manager shall have primary responsibility for preparing the reports.

### 5. Reimbursement of Plaintiffs' Monitoring Costs

In Section XVII of the Consent Decree, Defendants agreed to reimburse Plaintiffs up to $8,500 per year "for the cost of expert consultants used by plaintiffs to monitor performance of [the] Consent Decree." [6] Plaintiffs submitted to Defendants an invoice for services by their expert, Accessible Services, Inc., on June 11, 1997. To date, Defendants have not reimbursed Plaintiffs for this expense as provided for in Section XVII. Defendants are hereby ORDERED to reimburse Plaintiffs in the amount of $4,350.00 within ten days of the date of this order for services performed by their expert, Accessible Services, Inc., in monitoring compliance with the Consent Decree.

Future reimbursements shall be submitted to the Project Manager as discussed in the Court's Order of November 14, 1997. The Project Manager shall act within thirty days of receipt of the reimbursement request to approve or reject Plaintiffs' request. Within five working days after the Project Manager has approved Plaintiffs' reimbursement request, Defendants shall forward to Plaintiffs' counsel a check for the full amount of the request.

### 6. Other Obligations

Other portions of the Consent Decree set forth Defendants' obligations with respect to the School Access Plan, preliminary/emergency access work, identification and removal of physical barriers, and completion of work at "Emergency Shelter" sites. It is clear to the Court that much of this work has not been completed; however, it is impossible to tell from the parties' papers exactly how much work remains to be completed and how long it will take. Further, it is unclear to the Court the extent to which the voluminous submissions accompanying Defendants' opposition brief may have partially satisfied, in

---

**6.** Section XVII provides:

OUSD agrees to pay up to $8,500 per fiscal year to reimburse plaintiffs for the cost of expert consultants used by plaintiffs to monitor performance of this Consent Decree. Under no circumstances shall OUSD be liable for any monitoring costs over and above the $8,500 per year provided for by this paragraph. Under no circumstances shall OUSD be liable for or required to pay attorney's fees (from the $8,500 or otherwise) for time spent by plain-

tiffs' attorneys monitoring OUSD's performance of the Consent Decree. Plaintiffs agree that, apart from fees which may be recovered pursuant to paragraph XIX, plaintiffs may move for fees only for work performed seeking judicial enforcement of the Decree. If plaintiffs do move for fees for judicial enforcement, all legal and factual issues related to plaintiffs' entitlement to such fees shall be subject to resolution by the court.

however untimely a fashion, some of Defendants' reporting obligations to Plaintiffs.

Therefore, the parties are ORDERED to appear before the Court at 10:00 a.m. on January 15, 1998, at which time Defendants' Project Manager shall be prepared to inform the Court of the status of work performed pursuant to the Consent Decree and shall explain the nature and extent of any delays. The parties shall meet and confer prior to the date of the hearing, and shall submit a joint letter brief to the Court no later than January 12, 1997, stating the extent to which the documents accompanying Defendants' opposition brief satisfy the substantive reporting requirements of the Consent Decree. The parties shall further inform the Court whether, in light of the information disclosed by Defendants to date, a reasonable schedule is in place for completion of work pursuant to the Consent Decree.

### 7. Attorney's Fees

Defendants are ORDERED to pay Plaintiffs' reasonable attorney's fees and costs in bringing this motion to compel compliance with the consent decree. Plaintiffs shall submit an affidavit detailing the fees and costs expended in bringing this motion no later than January 30, 1998.

### CONCLUSION

**The parties are hereby ORDERED to meet the deadlines for performance set forth below. Failure to comply may result in a recommendation to the District Court that the party in question be found in contempt of court and be subject to a civil penalty.**

The Consent Decree is hereby modified and the parties ordered to comply as follows:

1. Defendants shall file and serve on Plaintiffs a programmatic self-evaluation pursuant to Section III.A, clearly labeled as such, no later than January 30, 1998.

2. Defendants shall file and serve on Plaintiffs a survey of existing facilities pursuant to Section IV of the Consent Decree as soon as possible, but in no event later than January 30, 1998.

3. The parties shall meet and confer and file with the Court no later than January 30, 1998, a letter brief detailing an agreed-upon timeline for the repair, modification or removal of safety hazards at each school as described in Section II.B.3.

4. Defendants shall file and serve on Plaintiffs throughout the life of the Consent Decree semi-annual written reports, to be prepared by the Project Manager and filed on January 31 and July 31 each year, as described in Part 4 above.

5. Defendants shall reimburse Plaintiffs in the amount of $4,350.00 within ten days of the date of this order for expenses incurred under Section XVII. Future requests for reimbursement shall be approved or denied by the Project Manager within thirty days of receipt. A check for the full amount of the request shall be forwarded to Plaintiffs' counsel within five working days after a reimbursement request has been approved by the Project Manager.

6. The parties are ordered to appear before the Court at 10:00 a.m. on January 15, 1998, at which time Defendants' Project Manager shall be prepared to inform the Court of the status of work performed pursuant to the Consent Decree and shall explain the nature and extent of any delays. The parties shall meet and confer prior to the date of the hearing, and shall inform the Court by joint letter brief no later than January 12, 1998, the extent to which the documents accompanying Defendants' opposition brief satisfy the substantive reporting requirements of the Consent Decree. The parties shall further inform the Court whether, in light of the information disclosed by Defendants to date, a reasonable schedule is in place for completion of work pursuant to the Consent Decree.

7. Defendants shall pay Plaintiffs reasonable attorney's fees and costs in bringing this motion to compel compliance with the Consent Decree. Plaintiffs

shall submit an affidavit detailing the fees and costs expended in bringing this motion no later than January 30, 1998.

Defendants are directed to apply to this Court for an order modifying the Consent Decree if substantially changed circumstances make it impossible or impracticable to comply with the terms of the decree by the dates set forth herein.

IT IS SO ORDERED.